IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Christopher Rogers,                          :

               Petitioner           :           Civil Action 2:09-cv-00243

  v.                                         :           Judge Frost

Phillip Kerns, Warden                        :           Magistrate Judge Abel

             Respondent           :

## Report and Recommendation

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Magistrate Judge on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. Petitioner's request for discovery, a stay of proceedings, and an evidentiary hearing are **DENIED**.

## FACTS and PROCEDURAL HISTORY

The Ohio Twelfth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On January 17, 2003, appellant and Nathan Soward, along with several other friends, spent the evening together, drinking alcohol, smoking marijuana, and using cocaine. Appellant later phoned W.B., a minor, and invited him to join the group. He was overheard telling W.B. that "[it] was going to go down like Tupac." FN1 W.B. and another friend, J.Y., also a minor, went

to appellant's apartment where more drugs were consumed. In the early morning hours of January 18, 2003, Soward was ready to leave and he, J.Y., and appellant departed in appellant's truck. At trial, J.Y. testified that appellant was too intoxicated to drive; consequently, J.Y. drove. While they were traveling, and without warning, J.Y. heard two gunshots, turned, and saw Soward slump over. Shocked and upset over this turn of events, he stopped the truck, got out, and climbed into the bed of the truck. He told appellant he wanted to go home and appellant started driving. A short time later appellant stopped along an isolated road, and after a few moments, J.Y. got back inside the truck and discovered that Soward's body was no longer there. Appellant testified that he was the driver and without warning, heard two shots, and saw Soward slump over. He testified that he and J.Y. then drove to an isolated area and J.Y. asked him to help move Soward's body.

FN1. Appellant clarified at trial that Tupac was a rapper who was killed by a gunshot while riding in a car, and that there are no suspects in his death.

The next day appellant power washed his truck and laundered his clothing, including the coat he had been wearing. W.B. washed and bleached the gun, and he and J.Y. later gave it to a drug dealer in exchange for marijuana. Appellant recounted the previous night's events to W.B., telling him that he had shot Soward in the head and described disposing of his body. Soward's body was soon after discovered by a passersby in an isolated area of Fayette County.

A few days later appellant was arrested on a probation violation and questioned about the murder. After several hours of questioning by police, he implicated himself in the murder and provided a written confession which stated: "The death of Nathan Sowards was caused by a gunshot fired by Chris Rogers." Appellant was charged with aggravated murder and tampering with evidence. The matter proceeded to trial and a jury found appellant guilty of the charges. He was sentenced to life imprisonment with the possibility of parole after 20 years for aggravated murder, and a consecutive five-year prison term on the tampering with evidence charge.

*State v. Rogers*, 2005 WL 3455126 (Ohio App. 12th Dist. December. 19, 2005). Petitioner filed

a timely appeal in which he raised the following assignments of error:

> 1. The trial court erred by prohibiting defense counsel from asking about [J.Y's] history of breaking into the homes of drug dealers and stealing their guns, as well as his history of using guns.
>
> 2. The trial court erred by ordering Appellant to disclose attorney-client communication.
>
> 3. The trial court erred by permitting the State to introduce into evidence statements Appellant made after asking to make a phone call seeking a lawyer.
>
> 4. The trial court erred by permitting the prosecutor to engage in improper remarks during closing arguments.
>
> 5. The trial court erred by imposing a void sentence.
>
> 6. The trial court erred by imposing a maximum, consecutive sentence without explaining the reasons.
>
> 7. A trial court may not impose a non-minimum prison term in the absence of jury findings of the factors set forth in R.C. 2929.14(C) and (E)(2).
>
> 8. The trial court erred by imposing a fine without considering Appellant's ability to pay.

*See id.* On December 15, 2005, the appellate court affirmed the judgment of the trial court,

but sustained petitioner's fifth assignment of error and reversed his sentence due to the

trial court's failure to advise petitioner at sentence of post release control, and remanded

the case for re-sentencing.[1]  On May 10, 2005, the Ohio Supreme Court dismissed

---

[1] The appellate court declined to address petitioner's remaining assignments of error relating to his sentence as moot.

petitioner's subsequent appeal.

> On remand, the trial court held a sentencing hearing, and imposed a sentence of life in prison with the possibility of parole after 20 years for aggravated murder, and a consecutive three-year sentence for tampering with evidence. The court imposed fines, but suspended those fines on a finding that appellant was indigent.

*State v. Rogers*, 2007 WL 2077359 (Ohio App. 12th Dist. July 23, 2007). Petitioner again appealed his sentence, raising the following assignments of error:

> 1.    THE   TRIAL   COURT   ERRED   BY   IMPOSING POSTRELEASE CONTROL.
>
> 2.    THE   TRIAL   COURT   ERRED   BY   IMPOSING   NON-MINIMUM, CONSECUTIVE PRISON SENTENCES.

*See id.* On July 23, 2007, the appellate court affirmed the trial court's judgment. *Id.* On December 26, 2007, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *State v. Rogers*, 116 Ohio St.3d 1457 (2007).

On January 23, 2009, petitioner filed a delayed application to reopen his appeal pursuant to Ohio Appellate Rule 26(B). *Exhibit 24 to Return of Writ.* He asserted that he had been denied the effective assistance of appellate counsel because his attorney failed to raise the following claims on direct appeal:

> 1.  Appellant's conviction for aggravated murder was against the manifest weight of the evidence.
>
> 2.   The trial court committed plain error when allowing

4

discussion of a polygraph by the government and violated the appellant's due process rights under the federal constitution.

3.  Appellant's confession was not voluntary.

*See id.*  On May 20, 2009, the appellate court denied petitioner's delayed Rule 26(B) application as untimely.  *Exhibit 26 to Return of Writ.*  On August 26, 2009, the Ohio Supreme Court dismissed petitioner's subsequent appeal.  *State v. Rogers*, 122 Ohio St.3d 1506 (2009).

On March 24, 2009, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

1.    The State violated petitioner's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution by prohibiting questions regarding a co-defendant's criminal history.

2.  The State violated petitioner's right to counsel under the Fifth and Sixth Amendments by introducing statements petitioner made after asking to make a phone call to a lawyer.

3.  The State violated petitioner's due process rights under the Fifth Amendment to the United States Constitution by commenting on his decision to plead not guilty in closing argument.

4.  Petitioner's conviction for aggravated murder was against the manifest weight of the evidence in violation of the Fifth Amendment to the federal Constitution.

5

5.   The trial court committed plain error when allowing discussion of a polygraph by the government and violated the petitioner's due process rights under the federal Constitution.

6.  Petitioner's confession was not voluntary.

7.  The trial court erred in sentencing petitioner to consecutive sentences.

It is the position of the respondent that petitioner's claims are waived or without merit.

Petitioner's request for a stay is **DENIED**, as moot.

Preliminarily, respondent contends that petitioner's habeas corpus petition should be dismissed for failure to comply with Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts, which provides:

The petition must ask for relief from the state-court judgment being contested.
(c) Form. The petition must:

(1) specify all the grounds for relief available to the petitioner;

(2) state the facts supporting each ground;

(3) state the relief requested;

(4) be printed, typewritten, or legibly handwritten; and

(5) be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242.

According to respondent, petitioner has failed to make clear the nature of the constitutional

violations he alleges. *See Return of Writ.* The Magistrate Judge does not agree. Respondent's motion to dismiss for failure to comply with Rule 2(c) is **DENIED**.

### REQUEST FOR DISCOVERY and EXPANSION OF RECORD

Petitioner has filed a request for discovery and expansion of the record. See Petition. Respondent opposes petitioner's request. Doc. No. 8.

The discovery processes contained in the Federal Rules of Civil Procedure do not automatically apply to habeas corpus actions. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley,* 520 U.S. 899 (1997). In *Harris v. Nelson,* 394 U.S. 286, 295 (1969), the United States Supreme Court held that the "broad discovery provisions" of the Federal Rules of Civil Procedure did not apply in habeas corpus proceedings. Following *Harris,* the Rules Governing Section 2254 Cases In United States District Courts were promulgated in 1976. Specifically, Rule 6(a) provides-

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Under this "good cause" standard, a district court should grant leave to conduct discovery in habeas corpus proceedings only " 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are more fully developed, be able to demonstrate that he is ... entitled to relief....' " *Bracy,* 520 U.S. at 908-909 (quoting *Harris,* 394 U.S. at 300). *See also Stanford v. Parker,* 266 F.3d 442, 460 (6th Cir.2001).

> "The burden of demonstrating the materiality of the information requested is on the moving party." *Stanford,* 266 F.3d at 460. Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Rector v. Johnson,* 120 F.3d 551, 562 (5th Cir.1997); *see also Stanford,* 266 F.3d at 460. "Conclusory allegations are not enough to warrant discovery under [Rule 6]; the petitioner must set forth specific allegations of fact ." *Ward v. Whitley,* 21 F.3d 1355, 1367 (5th Cir.1994).

*Williams v. Bagley,* 380 F.3d 932, 975 (6th Cir.2004). Petitioner neither indicates the nature of any additional items of discovery he seeks, nor does it appear from the record that any additional material not already a part of the record he requires for resolution of his claims. Petitioner's request for discovery and for expansion of the record therefore is **DENIED**.

### Claim One

In claim one, petitioner asserts that he was denied due process because the trial court limited his cross examination, thereby denying him his right to confront and cross examine the witness, and to present a defense. The state appellate court rejected this claim as follows:

> [Petitioner asserts that]:
>
> "The trial court erred by prohibiting defense counsel from asking about [J.Y's] history of breaking into the homes of drug dealers and stealing their guns, as well as his history of using guns."
>
> The admission or exclusion of evidence rests within the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. *State v. Issa,* 93 Ohio St.3d 49, 2001-Ohio-1290. An abuse of discretion connotes more than an error in law or judgment; it implies that the court's

8

attitude is unreasonable, arbitrary, or unconscionable. See *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 48.

In his first assignment of error, appellant argues that the trial court erred by sustaining the state's objection to the following question: "do you ever go out looking for excitement with [W.B.]?" "Excitement" was clarified by counsel to mean "robbing houses." Appellant argues that the testimony should have been allowed as it demonstrates that J.Y. "had a preparation and plan to steal Appellant's gun, as well as the knowledge to carry out the plan."

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith on a particular occasion. See Evid.R. 404(B); *State v. Curry* (1975), 43 Ohio St.2d 66, 68-69. However, such evidence may be used for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid.R. 404(B). We note that appellant's contention that J.Y. planned to, and in fact did steal his gun, is unsupported by any evidence in the record. Further, we conclude that the trial court's ruling was not an abuse of its discretion as the evidence was not offered for a permitted "other purpose," but rather only to discredit J.Y.'s character. Evidence that J.Y. had burglarized other homes and stolen firearms is not evidence of his plan or preparation to steal appellant's gun as appellant contends.

Appellant also argues that the evidence was relevant to establish J.Y.'s propensity for truthfulness, and should have been admitted under Evid.R. 608(B). This rule concerns evidence of character and conduct of a witness and states: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of a crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness * * *."

9

> Evid.R. 608(B) vests a trial court with discretion to allow cross-examination about specific instances of conduct of a witness "if clearly probative of truthfulness or untruthfulness." See, also, *State v. Brooks,* 75 Ohio St.3d 148, 151, 1996-Ohio-134. Consequently, there is a requirement of a "high degree of probative value of instances of prior conduct as to truthfulness or untruthfulness of the witness before the trial court will allow such cross-examination." *State v. Miller,* Trumbull App. No.2004-T-0082, 2005-Ohio-5283, ¶ 35.
>
> In the present case, appellant wished to cross-examine the witness about unsubstantiated allegations that he had stolen weapons. Given the tenuous nature of appellant's assertion, we find that the trial court did not abuse its discretion in sustaining the state's objection to the question. Appellant's first assignment of error is overruled.

*State v. Rogers, supra.* The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a

person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Court of Appeals for the Sixth Circuit has summarized this standard as follows:

Under the "contrary to" clause, a federal court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Bugh v. Mitchell*, 329 F.3d 496, 501 (6th Cir. 2003). " '[C]learly established Federal law, as determined by the Supreme Court of the United States,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.' " *Williams v. Bagley*, 380 F.3d 932, 942 (6th Cir.2004) (quoting *Williams*, 529 U.S. at 412, 120 S.Ct. 1495).

*Wilson v. Parker*,  515 F.3d 682, 691 (6th Cir. 2008).

The Court notes, however, that the state appellate court does not appear to have addressed petitioner's federal constitutional claims.  Under these circumstances, this Court conducts an independent review of petitioner's claim. See *Schoenberger v. Russell*, 290 F.3d 831, 835 (6th Cir. 2002), citing *Harris v. Stovall,* 212 F.3d 940, 943 (6th Cir. 2000). "That

independent review, however, is not a full, de novo review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Harris v. Stovall*, 212 F.3d at 943 (footnote omitted). Petitioner cannot meet this standard here.

To the extent that he asserts the violation of state evidentiary rules, his claim is without merit. Federal habeas review of state court evidentiary rulings is extremely limited. *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir.1990). Evidentiary questions generally do not rise to a constitutional level unless the error was so prejudicial as to deprive a defendant of a fundamentally fair trial, thereby violating due process. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1983). When such errors are alleged, the federal court's inquiry in reviewing these claims is directed to whether the evidence was rationally connected to the crime charged. *Carter v. Jago*, 637 F.2d 449, 457 (6th Cir.1980). For the reasons addressed by the state appellate court, such were the circumstances here.

Petitioner's federal constitutional claim likewise fails.

"The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Constitution guarantees a criminal defendant the right to present a complete and meaningful defense, including the right to cross examine witnesses against him. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *Davis v. Alaska*, 415 U.S. 308, 315 (1974). "Subject always

to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach." *Davis v. Alaska*, 415 U.S. at 316.   However, the Supreme Court has never held that a criminal defendant has the right to cross examine a witness against him "in whatever manner, or regarding whatever subject" he may choose.  *Morningstar v. Hurley*, 625 F.Supp.2d 434, 454 (E.D. Ky. July 21, 2008).

> Rather, the Court has repeatedly recognized situations where other legitimate interests limit the nature of the defendant's ability to confront witnesses. For example, in *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), the Supreme Court, though it ultimately ruled that the defendant's Sixth Amendment right had been violated, noted that:
>
>> It does not follow...  that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, *trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination* based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.
>
> *Id.* at 679, 106 S.Ct. 1431 (emphasis added).

*Id.*, at 454-455.

> At the same time, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable

> limits on such cross-examination based on concerns about,
> among other things, harassment, prejudice, confusion of the
> issues, the witness's safety, or interrogation that is repetitive or
> only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673,
> 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

*Haynes v. Haviland*, 267 Fed. Appx. 422, unpublished, 2008 WL 538497 *2 (6th Cir. Feb. 28,

2009).  For example, in *Boggs v. Collins*, 226 F.3d 728 (6th Cir. 2000), the United States Court

of Appeals for the Sixth Circuit, held that the defendant was not denied a constitutionally

fair trial when the trial court prohibited him from cross examining the alleged rape victim

regarding her prior allegedly false accusation of rape.   After reviewing United States

Supreme Court case law, the Sixth Circuit concluded that only cross examination on issues

of motive, bias, and prejudice, or motive to testify falsely, and not cross examination on a

witnesses general credibility, is constitutionally mandated.  *Id.*, at 740-741.  The trial court's

refusal to permit petitioner to cross examine a prosecution witness on his prior criminal

activity fails to meet this standard.

Claim one is without merit.

**Claim Two**

In claim two, petitioner asserts that he was denied his right to counsel because his

statements made to police after requesting to speak with an attorney were admitted against

him at trial.  The state appellate court rejected this claim as follows:

> Before interrogating appellant, police informed him of his
> *Miranda* rights, and appellant acknowledged that he
> understood them verbally, and by signing a written waiver of

14

those rights. When asked to explain his understanding of the right to counsel, appellant responded: "if I don't feel comfortable by myself I have the right to either have my parents or I hire a lawyer or have one appointed for me." Several times during the course of the interrogation appellant expressed a desire to speak with his father, but only once, when he was about to write his confession, did he ask for an attorney, inquiring if he could "write this with a lawyer." He was informed that he could but that there was no lawyer there, and he proceeded to provide a written confession.

If a suspect in a criminal investigation requests counsel at any time during questioning, he is not subject to further interrogation until a lawyer has been made available or until he reinitiates the conversation. *Edwards v. Arizona* (1981), 451 U.S. 477, 484-485, 101 S.Ct. 1880. However, "[i]nvocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.' ' *State v. Davis* (1994), 512 U.S. 452, 459, 114 S.Ct. 2350, 2355. The Court in *Davis* held further:

"[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, [ ] precedents do not require the cessation of questioning. * * * Rather, the suspect must unambiguously request counsel. * * * [A] suspect * * * must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* (citations omitted).

Statements less ambiguous than appellant's have been found to be too ambiguous to require that questioning cease. See, e.g., *Davis* (remark by accused that "[m]aybe I should talk to a lawyer" was not a request for counsel); *Ledbetter v. Edwards* (C .A.6, 1994), 35 F.3d 1062, 1070 (statement by accused that "[i]t would be nice" to have an attorney present was too ambiguous

> to require questioning to cease). Here, appellant's statement was no less ambiguous than those in *Davis* or *Ledbetter*. Therefore, we do not find that it was a formal, unequivocal request for an attorney such that it mandated the cessation of all further interrogation. Accordingly, the trial court did not err in admitting the statements made by appellant during the interrogation. Appellant's third assignment of error is overruled.

*State v. Rogers, supra.*

Petitioner contends that the state appellate court's decision was an unreasonable application of the facts in light of the evidence presented because petitioner "felt that the link to a lawyer was his father" and "requested to speak with his father numerous times." *Petitioner's Reply*, at 26. Petitioner further argues that his statement "and I can't write this with a lawyer or anybody" clearly articulated a request for counsel. *See id.*

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." The privilege against self-incrimination prohibits the government from using any statement against a criminal defendant "stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona, supra,* 384 U.S. at 444. A person being questioned while in custodial interrogation must be warned "that he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed." *Id.* Law enforcement officers

> must immediately cease questioning a suspect who has clearly asserted his right to have counsel present during custodial interrogation until such time as the defendant reinitiates communication or counsel is made available. *Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

*Zaffino v. Konteh,* 2006 WL 2360902 (N.D. Ohio August 15, 2006). However,

> where a request to cease questioning is "ambiguous or equivocal" in that a reasonable officer in light of the circumstances would have understood that the suspect *might* be invoking the right [to remain silent],

cessation of questioning is not required. *Calhoun v. McKee,* 2007 WL 1452911 (E.D. Michigan May 15, 2007), quoting *Davis v. United States,* 512 U.S. 452, 459 (1994). The United States Court of Appeals for the Sixth Circuit has likewise held that the defendant must clearly and unequivocally assert his right to silence before police are required to stop questioning him. *United States v. Hurst,* 228 F.3d 751, 759-60 (6th Cir.2000). As discussed by the state appellate court, a statement obtained by police in violation of *Miranda* is subject to the harmless error doctrine. *Arizona v. Fulminante,* 499 U.S. 279, 310 (1991).

Detective Davis Coe testified that, on January 24, 2003, prior to taking statements from petitioner, he read him his Miranda rights, asking petitioner to explain each right in his own words after being read each right. *Pretrial Transcript*, at 14, 19-20. The interview lasted approximately 4 to 5 hours. The interview was transcribed. *Id.* at 21. Petitioner indicated he understood his rights:

> The right to remain silent is you've got your... you can... ask me questions, and if I want to, I have the civil right not to

17

answer them.

*Id.* at 24.  According to Coe, petitioner never made any declaration that he wished to invoke his rights and not carry on with the interview.  He did ask to "take a breather" a couple of times.  *Id.*, at 25-26.  He never stated that he wished to stop the interview and have a lawyer. *Id.* at 27.  Petitioner did indicate that he wanted to talk to his father.  *Id.* at 31-32, 35.  He never said he wished to stop.  *Id.* at 39.

> [Petitioner]: I just feel like I should have some other kind of support with me or something.
>
> ... in this whole situation like my dad would want me to have a lawyer here.  I know that for everything that's already gone on.  He'd be upset with me right now if he, if he hears anything just cause the whole situation.

*Id.* at 40.  Police advised him that if he told the truth it would help him.  *Id.* at 41.  About three to four hours into the interrogation, petitioner stated: "I still, the rights I signed earlier, do I still have those?"  Detective Harris responded, "Absolutely."  And then there was a long pause and petitioner states, "I don't know... just go with the right I signed earlier."  *Id.* at 42.  Petitioner stated, "I'd like to have a little more time to do it.  I don't, I can't just do it.  I don't know why, I feel like it's now or never, and I don't know why I feel like that.  Why can't it be tomorrow.  I'll go to jail now and do it tomorrow."  *Id.* at 43.  Police responded, "Because I cannot send you and let this go.  Okay, if I don't have something else."  *Id.*  Police did not stop the interrogation.  *Id.* at 45.  Petitioner stated, "And I can't write this with a lawyer or anybody?"  Detective Harris responded, "You can write

18

it with a lawyer, but the lawyer wasn't there, and petitioner says, well I'm just asking.  And Detective Harris says okay and that's just what I'm answering.  And Rogers says I can't write it tomorrow or the next day?  And Detective Harris says, he's given you more chances than I would.  I've already told you that."  *Id*. at 46.

> [Police]: Chris, I'm sittin[g] here with my Sheriff standing out in this hallway.... and Harris jumps in and says, how many chances are you gonna give him?  And at some point... just below that, we have Mr. Rogers say I just don't want to get screwed over.  And you say, Chris how are you going to get screwed over with the truth.  How is the truth going to screw you over?

*Id*. at 47.  Petitioner later indicated:

> [T]he first thing I wrote was a lot more truth than what you guys want me to write.... I just feel like you guys won't stop until I write this, this, this, and this.

Id. at 47-48.  Police then advised petitioner:

> [Y]ou're looking at this a little backwards okay, you're looking at this as TV.... where they go, 396 consecutive life sentences, and I mean Chris this is Court. This is real.  There is minimums and maximums all right.  There's nothing that says you don't walk in there because you've been honest, you've been cooperative, and there's nothing that says that that judge cannot give you the minimum sentence.

*Id*. at 49.  In petitioner's first statement, he said that Mr. Yates did the shooting.  *Id*. at 59.  He did not sign that statement because police told him not to sign unless it was the truth.

*Id*.  He later signed a statement indicating "death of Nathan Salyers was caused by a

gunshot fired by Chris Rogers." *Id.* at 60.

Petitioner argues that, particularly in view of his age, that his statements to police that he wanted to speak to his father, that his father could hire an attorney for him, constituted a sufficiently clear request for counsel such that police should have immediately ceased questioning at that time.

> Under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts. Williams, 529 U.S. at 407-08, 120 S.Ct. 1495; *Bugh,* 329 F.3d at 501. Relief is also available under this clause if the state court decision either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context. *Lancaster v. Adams,* 324 F.3d 423, 429 (6th Cir.), *cert. denied,* 540 U.S. 1004, 124 S.Ct. 535, 157 L.Ed.2d 409 (2003). The proper inquiry for the "unreasonable application" analysis is whether the state court decision was objectively unreasonable and not simply erroneous or incorrect. *Williams,* 529 U.S. at 409-11, 120 S.Ct. 1495; *Mitchell v. Mason,* 325 F.3d 732, 738 (6th Cir.2003), *cert. denied,* 543 U.S. 1080, 125 S.Ct. 861, 160 L.Ed.2d 824 (2005).

*Keith v. Mitchell*, 455 F.3d 662, 669 (6th Cir. 2006). Upon review of the record, and for the reasons discussed by the state appellate court, this Court is not persuaded that petitioner has met this standard here.

### Procedural Default: Claims Three Through Six

Respondent argues that petitioner's ground three (prosecutor's comment on his decision to plead not guilty denied him due process of law) is procedurally defaulted because he did not object to the comment at trial. The Ohio Court of Appeals reviewed the

claim only for plain error. Respondent argues the petitioner's grounds four (conviction against manifest weight of the evidence), five (denied due process when the government discussed a polygraph), and six (involuntary confession) are procedurally barred from review in federal habeas corpus because he failed to present them to the Ohio Court of Appeals on direct appeal. Rogers' delayed appeal alleged that his attorney's failure to raise these claims on direct appeal was the ineffective assistance of counsel.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration.  28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless,* 459 U.S. 4, 6 (1982) ( *per curiam* ); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986). "First, the court must

determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.*

In claim three, petitioner asserts that he was denied a fair trial due to improper comments by the prosecutor during closing argument. Petitioner raised this claim on direct appeal; however, the state appellate court reviewed his claim for plain error only due to petitioner's failure to object at trial:

> [a]ppellant contends that his convictions should be reversed because he was unfairly prejudiced when the prosecutor remarked in closing arguments that the "reason we have all been here twelve days is because the Defendant plead not guilty and came up with a desperate defense. That's the only reason." Appellant contends that the statement is prosecutorial misconduct which should result in a new trial.
>
> We initially note that appellant failed to object to this alleged improper comment about which he now complains; he has therefore waived all but plain error. See *State v. Slagle* (1992), 65 Ohio St.3d 597; Crim.R. 52(B). "Plain error does not exist unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise." *State v. Moreland* (1990), 50 Ohio St.3d 58, 62. "Notice of plain error under Crim.R. 52(B)

is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.

When reviewing allegations of prosecutorial misconduct, appellate courts must consider that "the touchstone of due-process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *State v. Hill,* 75 Ohio St.3d 195, 203, 1996-Ohio-222, quoting *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940. The Ohio Supreme Court has held that prosecutorial misconduct is not grounds for error unless the defendant has been denied a fair trial. *State v. Maurer* (1984), 15 Ohio St.3d 239, 266. In order to reverse a conviction based on prosecutorial misconduct, the defendant must prove that the comments were improper and that they prejudicially affected the defendant's substantial rights. *State v. Smith* (1984), 14 Ohio St.3d 13, 14.

We agree with appellant that he was legally and procedurally entitled to plead not guilty, rely upon the presumption of innocence, and require the state to prove its case. *State v. Landrum* (1990), 53 Ohio St.3d 107, 111, fn. 1; see Crim.R. 11. The state's comment on his not guilty plea was consequently improper. Id. Regardless, we do not believe that the improper conduct prejudicially affected the substantial rights of appellant. The state of the evidence was such that appellant was not deprived of a fair trial, and the court instructed the jury both on the effect of the not guilty plea and that counsel's arguments were not evidence. Appellant's fourth assignment of error is overruled.

*State v. Rogers, supra*, 2005 WL 3455126.  A state appellate court's plain error review does not constitute a waiver of the state's procedural default rules.  *Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir.2000).

Petitioner argues that Ohio's contemporaneous objection rule does not constitute an adequate and independent state ground to preclude federal habeas review because the

23

Ohio Supreme Court "has occasionally, arbitrarily and unpredictably chosen to review the merits of issues in capital cases" rather than enforcing the rule. *Traverse*, at 4. Petitioner states that the Ohio Supreme Court has done so on at least 67 occasions. *Id*. Petitioner further complains that the contemporaneous objection rule is discretionary and randomly applied. *Id*., at 4-13.

Petitioner's arguments are not persuasive. Under Ohio's contemporaneous objection rule, an appellant who fails to object waives later review of the issue unless plain error can be shown. *Williams v. Bagley,* 380 F.3d 932, 968 (6th Cir. 2004) (citing *State v. Smith,* 89 Ohio St.3d 323, 332 (2000)). Further, the United States Court of Appeals for the Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice. *Id.; Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir.2001); *Stojetz v. Ishee,* 2006 WL 328155 *12 (S.D. Ohio Feb.10, 2006). This Court therefore reaches the same conclusion here.

> A state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default. *Williams,* 380 F.3d at 968; *Hinkle,* 271 F.3d at 244. The federal court, in determining whether a state court has relied on a procedural rule to bar review of an issue, examines the latest reasoned opinion of the state courts and presumes that later courts enforced the bar instead of rejecting the claim on the merits. *Hinkle,* 271 F.3d at 244 (citing *Ylst, v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)).

*Adams v. Bradshaw,* 484 F.Supp.2d 753, 771 (N.D. Ohio 2007).

In claim four, petitioner asserts that his conviction on aggravated murder was

against the manifest weight of the evidence.  In claim five, petitioner asserts that he was denied a fair trial because the trial court permitted evidence regarding a polygraph examination.  In claim six, petitioner asserts that his confession was involuntary.  Petitioner failed to present any of the foregoing claims to the state appellate court on direct appeal. Further, he may now no longer do so, under Ohio's doctrine of *res judicata*.  *State v. Cole,* 2 Ohio St.3d 112 (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981); *State v. Perry,* 10 Ohio St.2d 175 (1967). The state courts were never given the opportunity to enforce the procedural rule at issue due to the nature of petitioner's procedural default.   Petitioner first raised claims four, five and six in connection with his claim of ineffective assistance of appellate counsel, in Rule 26(B) proceedings; however, only claims of ineffective assistance of appellate counsel are properly addressed under Ohio's Rule 26(B).  Further, the state appellate court refused to address the merits of his claim of ineffective assistance of counsel, dismissing his Rule 26(B) application as untimely.  This Court therefore deems the first and second parts of *Maupin* to have been met with respect to these claims.

The Court must next decide whether the procedural rules at issue constitute an adequate and independent bases upon which to foreclose review of the petitioner's federal constitutional claims. This task requires the Court to balance the state's interests behind each procedural rule against the federal interest in reviewing federal claims. See *Maupin v. Smith,* 785 F.2d at 138. The Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir.2006); *Coleman v.*

*Mitchell,* 268 F.3d 417, 427-29 (6th Cir.2001); *Seymour v. Walker,* 224 F.3d 542, 555 (6th Cir.2000); *Byrd v. Collins,* 209 F.3d 486, 521-22 (6th Cir.2000); *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir.1998). The doctrine of *res judicata* is stated in unmistakable terms in countless Ohio decisions, and Ohio courts have consistently refused, in reliance on that doctrine, to review the merits of claims. *See State v. Cole, supra; State v. Ishmail, supra.* Further, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law. The third part of the *Maupin* test has been met.

Petitioner still may obtain federal habeas review of his claims if he establishes cause for his procedural default, as well as actual prejudice from the alleged constitutional violations. Petitioner has failed to meet this standard here. The ineffective assistance of counsel cannot constitute cause for his procedural defaults, since petitioner failed to present on direct appeal any claim of ineffective assistance of trial counsel, and the state appellate court rejected his Rule 26(B) application as untimely. See *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. at 491; *see also Sawyer v. Whitley,* 505 U.S. 333. After review of the record, the Court does not deem this to be such a case.

26

Claims three through six are procedurally defaulted.

**Claim Seven**

In claim seven, petitioner asserts that his sentence was unconstitutionally imposed. The state

appellate court rejected this claim as follows:

> [A]ppellant argues that the court erred in imposing a nonminimum sentence. He argues that after the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856, he is entitled to a "presumptive minimum" sentence and the imposition of more than a minimum sentence violates the Ex Post Facto and Due Process Clauses of the United States Constitution.
>
> However, as appellant acknowledges, this court has previously rejected similar claims regarding nonminimum sentences. *State v. Sheets*, Clermont App. No. CA2006-04-032, 2007-Ohio-1799; *State v. Doyle*, Brown App. No. CA2005-11-020, 2006-Ohio-5373. Accordingly, appellant's second assignment of error is overruled.

*State v. Rogers, supra*, 2007 WL 2077359.  Again, petitioner has failed to establish that the

state appellate court's decision is unreasonable so as to justify federal habeas corpus relief.

28 U.S.C. 2254(d), (e); *Williams v. Taylor, supra.*

Petitioner appears to argue that *Oregon v. Ice*, – U.S. –, 129 S.Ct. 711, 714 (2009),

mandates that he be re-sentenced because the trial judge imposed non-minimum

consecutive terms of incarceration.[2]  In *Oregon v. Ice*, the United States Supreme Court held

---

[2]  Petitioner does not argue that his sentence violated the Ex Post Facto Clause. In any event, this claim has been repeatedly rejected by this Court, as well as other courts to address the issue.  See *Hooks v. Sheets*, 603 F.3d 316 (6th Cir. April 27, 2010); *Smith v. Brunsman*, 626 F.Supp.2d 786, 793-95 (S.D. Ohio 2009).

that a state sentencing scheme in which judges are required to find certain facts before imposing consecutive, rather than concurrent, sentences does not violate the Sixth Amendment. Here, the trial court re-sentenced petitioner after *State v. Foster,* 109 Ohio St.3d 1 (2006)(excising unconstitutional fact-finding provisions of Ohio's sentencing statutes under *Blakely v. Washington*, 542 U.S. 296 (2004). Id., at 714-715. Nothing in *Oregon v. Ice*, requires that petitioner's sentence be re-imposed.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.** Petitioner's request for an evidentiary hearing, for discovery, and his motion to expand the record are **DENIED**.

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the

decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED**.


s/Mark R. Abel
United States Magistrate Judge